Nos. 17-6048, 17-6166, 17-6213, 17-6260, 17-6299, 17-6333

In The

# United States Court of Appeals
# for the Sixth Circuit

_____

David Samarripa, Stephon Mason, Jose Adrian Hernandez, Arnulfo Torres Perez, and Timmie D. Cole, Sr.

*Petitioners-Appellants*,

v.

J. Ray Ormond, Warden

*Respondent-Appellee.*

_____

On Appeal from the U.S. District Court for the Eastern District of Kentucky
The Honorable Danny C. Reeves, No. 6:17-cv-00086
The Honorable Karen K. Caldwell, Nos. 6:17-cv-00082, 6:17-cv-00072
The Honorable David L. Bunning, No. 6:17-cv-00081
The Honorable Gregory F. Van Tatenhove, No. 6:17-cv-00150

_____

**BRIEF ON BEHALF OF PETITIONERS-APPELLANTS**

_____

Katherine B. Wellington
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
katherine.wellington@hoganlovells.com

July 2, 2018                   *On Behalf of Petitioners-Appellants*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 17-6048, 17-6166, 17-6213, 17-6260, 17-6299, 17-6333

Case Name: Samarripa et al. v. Ormond

Name of counsel: Katherine B. Wellington

Pursuant to 6th Cir. R. 26.1, pro bono counsel on behalf of Petitioners-Appellants
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Pro bono counsel on behalf of Petitioners-Appellants is not aware of any such party.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> Pro bono counsel on behalf of Petitioners-Appellants is not aware of any such party.

CERTIFICATE OF SERVICE

I certify that on _____ July 2, 2018 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Katherine B. Wellington

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ................................................x

STATEMENT REGARDING PRO BONO COUNSEL ..........................................1

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF THE ISSUES.............................................................................2

INTRODUCTION ..................................................................................................2

STATEMENT OF THE CASE................................................................................4

    A.    The Writ Of Habeas Corpus ...................................................................4

    B.    Congress Adopts The Federal In Forma Pauperis Statute And The Prison Litigation Reform Act ........................................................6

    C.    Petitioners Seek In Forma Pauperis Status On Appeal ...........................9

            *1.*    *Petitioner Timmie D. Cole, Sr.*....................................................9

            *2.*    *Petitioner Jose Adrian Hernandez*.................................................11

            *3.*    *Petitioner Stephon Mason* ...........................................................12

            *4.*    *Petitioner Arnulfo Torres Perez*....................................................13

            *5.*    *Petitioner David Samarripa* .........................................................15

    D.    The Consolidation Of Petitioners' Cases And Appointment Of Pro Bono Counsel....................................................................................16

SUMMARY OF ARGUMENT .............................................................................17

STANDARD OF REVIEW ...................................................................................21

ARGUMENT ........................................................................................................21

**TABLE OF CONTENTS—Continued**

Page

I.   THE PLRA'S FILING FEE PROVISIONS DO NOT APPLY TO SECTION 2241 PETITIONS, WHICH ARE NOT "CIVIL" ACTIONS ...................................................................................21

     A.   The PLRA's Partial Filing Fee Regime Does Not Govern Habeas Petitions .......................................................................22

          1.   *Habeas Petitions Are Not "Civil" Actions, As That Term Is Used In The PLRA* ....................................................22

          2.   *The Text Of The PLRA Does Not Refer To Habeas Petitions* ...........................................................................25

          3.   *The Structure Of The PLRA Demonstrates That Its Fee Provisions Do Not Apply To Habeas Actions* ...............25

          4.   *The Purpose Of The PLRA Was To Stem The Tide Of Prisoner Civil Rights Litigation, Not To Erect Barriers To Habeas Relief* ..............................................................28

          5.   *Congress's Adoption Of AEDPA Further Demonstrates That It Did Not Intend To Create A Partial Filing Fee Regime For Habeas Actions* .........................................29

     B.   The PLRA Does Not Apply To Section 2241 Petitions, Which Are Habeas Actions ..................................................30

II.  COURTS ARE NOT AUTHORIZED TO IMPOSE PARTIAL APPELLATE FILING FEES ON SECTION 2241 PETITIONERS ............33

     A.   Text, Structure, Purpose, and Precedent Demonstrate That Courts Are Not Authorized To Impose Partial Filing Fees.....................33

          1.   *The Text Of Section 1915(a) Does Not Authorize Partial Filing Fees*.......................................................33

          2.   *The Structure Of Section 1915 Establishes That Congress Did Not Authorize Courts To Impose Partial Fees*.......................35

# TABLE OF CONTENTS—Continued

**Page**

     *3.*   *The Legislative History Of The PLRA And The Adoption Of AEDPA Demonstrate That Congress Did Not Intend For Habeas Petitioners To Pay Partial Fees* ...............................37

     *4.*   *Requiring A Partial Fee Is Inconsistent With The Supreme Court's Decision In* Adkins ............................................38

     *5.*   *Imposing A Partial Fee Is Inconsistent With Rule 24 Of The Federal Rules Of Appellate Procedure* ...................................39

  B.  The Rationales Cited By Courts For Imposing A Partial Filing Fee Are Fundamentally Flawed ...............................................................41

     *1.*   *The Greater-Includes-The-Lesser Principle Does Not Apply Here, Where The Greater Power Is The Power To Impose A Partial Fee* ....................................................................42

     *2.*   *It Is Up To Congress—Not The Courts—To Determine When Habeas Petitioners Should Be Required To Pay A Fee* ........................................................................................46

  C.  Pro Bono Counsel Has Not Identified Any Additional Authority That Grants Courts Discretion To Impose A Partial Filing Fee...............48

CONCLUSION .......................................................................................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996).................................................................44

*Adkins v. E.I. DuPont de Nemours & Co.*,
  335 U.S. 331 (1948)............................................................*passim*

*Anderson v. Singletary*,
  111 F.3d 801 (11th Cir. 1997) ...............................................30

*Blair-Bey v. Quick*,
  151 F.3d 1036 (D.C. Cir. 1998)...........................................*passim*

*Boumediene v. Bush*,
  553 U.S. 723 (2008)..........................................................4, 5, 27

*Braden v. Estelle*,
  428 F. Supp. 595 (S.D. Tex. 1977)........................................43

*Carmona v. U.S. Bureau of Prisons*,
  243 F.3d 629 (2d Cir. 2001) ...................................................32

*Collier v. Tatum*,
  722 F.2d 653 (11th Cir. 1983) ...........................................44, 46

*Davis v. Fechtel*,
  150 F.3d 486 (5th Cir. 1998) ...................................................32

*Davis v. United States*,
  417 U.S. 333 (1974)..................................................................5

*Degen v. United States*,
  517 U.S. 820 (1996)................................................................48

*Evans v. Croom*,
  650 F.2d 521 (4th Cir. 1981) ...................................................44

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Fisher v. Baker*,
  203 U.S. 174 (1906)..........................................................................22

*Garza v. Thaler*,
  585 F.3d 888 (5th Cir. 2009) ....................................................20, 33, 40, 41, 43

*Graham v. U.S. Parole Comm'n*,
  132 F.3d 33 (6th Cir. Dec. 8, 1997) (Table), 1997 WL 778515........................30

*Harries v. Bell*,
  417 F.3d 631 (6th Cir. 2005) ...........................................................................21

*Harris v. Garner*,
  216 F.3d 970 (11th Cir. 2000) .........................................................................32

*Harris v. Nelson*,
  394 U.S. 286 (1969)..........................................................................22, 23, 25

*Hill v. Masters*,
  836 F.3d 591 (6th Cir. 2016) .............................................................................6

*Hughes v. City of Albany*,
  76 F.3d 53 (2d Cir. 1996) ....................................................................42, 46, 47

*In re Stump*,
  449 F.2d 1297 (1st Cir. 1971)..........................................................................46

*In re Williamson*,
  786 F.2d 1336 (8th Cir. 1986) ............................................................42, 44, 47

*Jones v. Smith*,
  720 F.3d 142 (2d Cir. 2013) ............................................................................28

*Kincade v. Sparkman*,
  117 F.3d 949 (6th Cir. 1997) .....................................................................*passim*

*Lonchar v. Thomas*,
  517 U.S. 314 (1996)......................................................................................5, 48

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*Longbehn v. United States*,
    169 F.3d 1082 (7th Cir. 1999) ....................................................46, 47

*Lucien v. DeTella*,
    141 F.3d 773 (7th Cir. 1998) .................................................................8

*Malave v. Hedrick*,
    271 F.3d 1139 (8th Cir. 2001) ....................................................30, 32

*Martin v. Bissonette*,
    118 F.3d 871 (1st Cir. 1997)...............................................................30

*Martin v. United States*,
    96 F.3d 853 (7th Cir. 1996) ..........................................23, 25, 26, 30

*McGee v. Scism*,
    463 F. App'x 61 (3d Cir. 2012) .........................................................32

*McGore v. Wigglesworth*,
    114 F.3d 601 (6th Cir. 1997) .............................................................22

*McIntosh v. U.S. Parole Comm'n*,
    115 F.3d 809 (10th  Cir. 1997) .............................................31, 32, 47

*Naddi v. Hill*,
    106 F.3d 275 (9th Cir. 1997) .............................................................30

*O'Neal v. McAninch*,
    513 U.S. 432 (1995).............................................................................24

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973).............................................................................31

*Reyes v. Keane*,
    90 F.3d 676 (2d Cir. 1996) ...............................................................30

*Santana v. United States*,
    98 F.3d 752 (3d Cir. 1996) ....................................................5, 23, 30

# TABLE OF AUTHORITIES—Continued

**Page(s)**

*Schlanger v. Seamans*,
  401 U.S. 487 (1971)...................................................................17, 23, 24

*Simmons v. Himmelreich*,
  136 S. Ct. 1843 (2016).....................................................................33

*Smith v. Angelone*,
  111 F.3d 1126 (4th Cir. 1997) ...........................................................30

*Thomas v. Zatecky*,
  712 F.3d 1004 (7th Cir. 2013) ...........................................................48

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001)..........................................................................35

*United States v. Cole*,
  101 F.3d 1076 (5th Cir. 1996) ...........................................................30

*United States v. Simmonds*,
  111 F.3d 737 (10th Cir. 1997) ...........................................................30

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013).........................................................................36

*Walker v. O'Brien*,
  216 F.3d 626 (7th Cir. 2000) ........................................................10, 31, 32, 41

*Walton v. Hammons*,
  192 F.3d 590 (6th Cir. 1999) ...........................................................25

**CONSTITUTIONAL PROVISION:**

U.S. Const. art. I, § 9, cl. 2.......................................................................4

**STATUTES:**

Act of July 20, 1892, ch. 209, §§ 1-5, 27 Stat. 252 ...............................3, 7

Act of June 25, 1948, ch. 646, 62 Stat. 954 .....................................3, 7, 37

# TABLE OF AUTHORITIES—Continued

**Page(s)**

Act of Sept. 21, 1959, Pub. L. No. 86-320, 73 Stat. 590 ............................................ 7

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),
Pub. L. No. 104–132, 110 Stat. 1214, 1217–26 (1996) .............................. *passim*

Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, tit. VIII,
110 Stat. 1321 (1996) ...................................................................... *passim*

28 U.S.C. § 1291 ............................................................................................ 2

28 U.S.C. § 1913 ......................................................................................... 6, 48

28 U.S.C. § 1914(a) ................................................................................ 6, 27, 37

28 U.S.C. § 1915 .......................................................................................... *passim*

28 U.S.C. § 1915(a) .................................................................................... *passim*

28 U.S.C. § 1915(a)(1) ........................................................................... 8, 34, 48

28 U.S.C. § 1915(a)(3) ................................................................................... 34

28 U.S.C. § 1915(b) .................................................................................... *passim*

28 U.S.C. § 1915(b)(1) ....................................................................... 21, 25, 34, 35

28 U.S.C. § 1915(b)(2) ................................................................................... 36

19 U.S.C. § 1915(g) ............................................................................ 17, 26, 27

28 U.S.C. § 1917 ............................................................................................ 6

28 U.S.C. § 2241 .......................................................................................... *passim*

28 U.S.C. § 2241(a) .................................................................................... 6, 31

28 U.S.C. § 2244 ........................................................................................... 38

28 U.S.C. § 2254 .......................................................................................... *passim*

28 U.S.C. § 2254(a) ........................................................................................ 5

# TABLE OF AUTHORITIES—Continued

**Page(s)**

28 U.S.C. § 2255 .................................................................*passim*

28 U.S.C. § 2255(a) ...............................................................6

**RULES:**

Fed. R. App. P. 24 ...........................................................39, 41

Fed. R. App. P. 24(a) .........................................................9, 20

Fed. R. App. P. 24(a)(2) ..................................................39, 40

Fed. R. App. P. 24(a)(4) ..................................................40, 41

Fed. R. App. P. 24(a)(5) ..................................................40, 41

**LEGISLATIVE MATERIAL:**

141 Cong. Rec. S7524 (daily ed. May 25, 1995) ....................28

**OTHER AUTHORITIES:**

Court of Appeals Miscellaneous Fee Schedule (effective Dec. 1,
2016), *available at* http://www.uscourts.gov/services-
forms/fees/court-appeals-miscellaneous-fee-schedule .......................6

## STATEMENT REGARDING ORAL ARGUMENT

This Court appointed pro bono counsel in these consolidated cases sua sponte.   Counsel respectfully submits that, given the importance of the issues presented, oral argument would be helpful in the disposition of petitioners' in forma pauperis motions.   This Court has not addressed whether district courts—and this Court—have authority to impose partial filing fees on habeas petitioners seeking relief under 28 U.S.C. § 2241.   In light of the Eastern District of Kentucky's frequent practice of imposing such fees, the barrier those fees place on habeas petitioners' access to this Court, and the lack of any authority in the federal in forma pauperis statute to impose such fees, oral argument is warranted.

## STATEMENT REGARDING PRO BONO COUNSEL

Counsel was appointed to file a global brief addressing whether the assessment of a partial appellate filing fee is consistent with the statutory authority governing fees and otherwise within the authority of the district court. *See* Order, No. 17-6048, Dkt. 19-1 (Apr. 24, 2018). Counsel's appointment is pro bono to aid the court in the full presentation of the issue and not for the representation of the individual petitioners. *See id.*

## STATEMENT OF JURISDICTION

The U.S. District Court for the Eastern District of Kentucky issued final judgments denying or dismissing petitioners' 28 U.S.C. § 2241 petitions. Petitioners sought leave to appeal in forma pauperis. The District Court granted the motions in part, requiring petitioners to pay a partial filing fee. Petitioners have appealed the disposition of their Section 2241 petitions to this Court, and they seek to proceed in forma pauperis on appeal.[1] The District Court had jurisdiction

---

[1] The district court entered judgment in Timmie D. Cole, Sr.'s case on October 12, 2017, and Cole's notice of appeal was filed on November 9, 2017. Judgment, RE1 5, Page ID #35; Notice of Appeal, RE1 6, Page ID #36. The district court entered judgment in Jose Adrian Hernandez's case on September 18, 2017, and Hernandez's notice of appeal was filed on October 13, 2017. Judgment, RE2 16, Page ID #204; Notice of Appeal, RE2 19, Page ID #221. The district court entered judgment in Stephon Mason's case on September 15, 2017, and Mason's notice of appeal was filed on October 4, 2017. *See* Judgment, RE3 17, Page ID #186; Notice of Appeal, RE3 18, Page ID #187. The district court entered judgment in Arnulfo Torres Perez's case on September 15, 2017, and Perez's renewed notice of appeal was filed on October 25, 2017. *See* Judgment, RE4 18, Page ID #163; Renewed Notice of Appeal, RE4 23, Page ID #182. The district court entered

under 28 U.S.C. § 2241.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the filing fee provisions of the Prison Litigation Reform Act (PLRA) apply to habeas petitions brought under 28 U.S.C. § 2241.

2.    If not, whether courts have authority to impose a partial appellate filing fee on Section 2241 petitioners.

## INTRODUCTION

Petitioners in these consolidated cases seek to appeal the denial or dismissal of their habeas petitions, filed pursuant to 28 U.S.C. § 2241, without prepayment of an appellate filing fee.  The district courts granted their requests only in part, requiring petitioners to pay a portion of the $505 fee, depending on their financial circumstances.  This Court appointed pro bono counsel to address whether the courts have authority to require petitioners to pay a partial appellate filing fee.  The answer to that question, under the statutes Congress has passed and repeatedly revised, is no.

Congress has long set the boundaries of in forma pauperis status in the federal courts.  In 1892, Congress adopted the first federal in forma pauperis

---

judgment in David Samarripa's case on August 24, 2017, and Samarripa's notice of appeal was filed on September 5, 2017.  *See* Judgment, RE5 17, Page ID #187; Notice of Appeal, RE5 19, Page ID #193.

statute.  *See* Act of July 20, 1892, ch. 209, §§ 1-5, 27 Stat. 252.  Over the past

century, Congress has gradually revised that statute, carving out exceptions to in

forma pauperis status for litigants who appeal in bad faith, *see* Act of June 25,

1948, ch. 646, 62 Stat. 954, and more recently for prisoners who file civil suits.

*See* 28 U.S.C. § 1915(b).  In all of that time, however, Congress has *not* created an

exception for litigants who can pay part—but not all—of the filing fees.

Nor is there any indication that Congress would want such an exception to

apply.  In the PLRA, Congress created an elaborate mechanism for collecting

partial filing fees from prisoners, including an initial partial filing fee and

additional monthly payments.  *See* Pub. L. No. 104-134, tit. VIII, 110 Stat. 1321

(1996); *see also* 28 U.S.C. § 1915(b).  Congress limited that mechanism, however,

to *civil suits* filed by prisoners.  Habeas petitions are not civil suits, as that term is

used in the PLRA.  *See Kincade v. Sparkman*, 117 F.3d 949, 950-951 (6th Cir.

1997).  The fact that Congress created a specific process for collecting partial filing

fees in certain actions filed by prisoners—but did not require habeas petitioners to

comply with that process—strongly suggests that Congress did not intend for

habeas petitioners to be subject to a partial filing fee regime.  That conclusion is

further confirmed by Congress's enactment of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, 1217–

26 (1996), which imposed significant restrictions on habeas petitioners, but did not require them to pay partial filing fees.

This Court should hold that the federal in forma pauperis statute means what it says: Courts may require a litigant to pay the full filing fee, or they may grant in forma pauperis status. *See* 28 U.S.C. § 1915(a). Courts may not, however, make up a partial filing fee regime nowhere found in the text of the statute. Petitioners in these Section 2241 actions cannot afford to pay the full appellate filing fee. Under the plain text of the in forma pauperis statute, this Court should accordingly grant petitioners full in forma pauperis status.

## STATEMENT OF THE CASE

### A.    The Writ Of Habeas Corpus.

Habeas corpus is a "writ employed to bring a person before a court, most frequently to ensure the party's imprisonment or detention is not illegal." *Boumediene v. Bush*, 553 U.S. 723, 737 (2008) (internal quotation marks omitted). The origins of the writ stretch back to the Magna Carta, which "decreed that no man would be imprisoned contrary to the law of the land." *Id.* at 740. The Framers of the Constitution viewed the writ as an important means of protecting individual liberty and ensuring separation of powers. *See id.* at 743-744; *see also* U.S. Const. art. I, § 9, cl. 2. As Alexander Hamilton explained, the writ of habeas

corpus serves a "remedy" for the evil of "arbitrary government." *Boumediene*, 553 U.S. at 744 (internal quotation marks omitted).

Over time, the writ of habeas corpus has evolved from a simple set of rules to a more complicated body of procedure. *See Lonchar v. Thomas*, 517 U.S. 314, 322 (1996). In recent decades, Congress has developed "complex procedural principles that regularize and thereby narrow the discretion that individual judges can freely exercise" in habeas corpus cases. *Id.* at 322. "These legal principles are embodied in statutes, rules, precedents, and practices that control the writ's exercise." *Id.* at 323. Although habeas corpus is an equitable remedy, that "does not authorize a court to ignore" relevant "statutes, rules, and precedents." *Id.*

Habeas petitions typically follow one of three routes. A prisoner confined pursuant to a state-court judgment may seek habeas relief under 28 U.S.C. § 2254. A Section 2254 petition must allege that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A prisoner confined pursuant to a federal-court judgment may seek habeas-style relief under 28 U.S.C. § 2255. *See Davis v. United States*, 417 U.S. 333, 343 (1974) (Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.").[2] A Section 2255 motion must allege that the prisoner's "sentence was imposed in violation of the Constitution or laws of the

---

[2] Section 2255 motions are commonly referred to as habeas petitions. *See Santana v. United States*, 98 F.3d 752, 753 n.1 (3d Cir. 1996).

United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Section 2241 states that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  This Court has held that "[a] challenge to the validity of a federal conviction or sentence is generally brought as a habeas corpus petition pursuant to § 2255, while a petition concerning the manner or execution of a sentence is appropriate under § 2241."  *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016).  Where a remedy under Section 2255 is inadequate or ineffective, however, a prisoner may "bring a claim challenging his conviction or imposition of sentence under § 2241."  *Id.* (internal quotation marks omitted).

## B.    Congress Adopts The Federal In Forma Pauperis Statute And The Prison Litigation Reform Act.

In order to file suit in federal court, a litigant must typically pay a filing fee. For habeas petitions, that fee is $5; for civil actions, it is $350; and for appeals, it is $505.  *See* 28 U.S.C. §§ 1913, 1914(a), 1917; *see also* Court of Appeals Miscellaneous Fee Schedule (effective Dec. 1, 2016).[3]  To ensure that no person

---

[3]    *Available at* http://www.uscourts.gov/services-forms/fees/court-appeals-miscellaneous-fee-schedule.

"shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States solely because [of] his poverty," however, Congress permits litigants to file suit in forma pauperis. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948) (internal quotation marks omitted).

Congress enacted the first in forma pauperis statute in 1892, providing that a citizen may commence any suit or action "without being required to prepay fees or costs" by filing an affidavit stating that he is impoverished. *See* Act of July 20, 1892, ch. 209, §§ 1-5, 27 Stat. 252. In 1948, Congress enacted the modern version of the in forma pauperis statute, codified at 28 U.S.C. § 1915, which provided that any federal court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a citizen who makes [an] affidavit that he is unable to pay such costs." Act of June 25, 1948, ch. 646, 62 Stat. 954. Congress made minor revisions to Section 1915 in the decades that followed, leaving its text mostly intact. *See, e.g.*, Act of Sept. 21, 1959, Pub. L. No. 86-320, 73 Stat. 590 (substituting "person" for "citizen").

Congress enacted the current version of Section 1915 in 1996. At that time, Congress was concerned with the "alarming explosion of civil rights lawsuits filed by both state and federal prisoners" that "appeared in great measure to raise

frivolous due process and cruel and unusual punishment claims." *Kincade*, 117 F.3d at 951. To address that concern, Congress adopted the PLRA, which placed a number of restrictions on civil suits filed by prisoners.

As relevant here, the PLRA made two amendments to the in forma pauperis statute. First, it amended Section 1915(a) to provide that courts may grant in forma pauperis status only "[s]ubject to" the requirements of 1915(b). The revised Section 1915(a) states:

> *Subject to subsection (b)*, any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1) (emphasis added).[4] Second, the PLRA added Section 1915(b), which requires any prisoner who "brings a civil action or files an appeal in forma pauperis" to comply with an elaborate regime for collecting partial filing fees. 19 U.S.C. § 1915(b). Under that regime—which applies only to "civil" suits—courts are required to assess an initial partial filing fee of 20 percent of the average monthly deposits in a prisoner's trust fund account, or 20 percent of the

---

[4] A litigant granted in forma pauperis status is excused from prepaying filing fees but is ultimately responsible for those fees. *See Lucien v. DeTella*, 141 F.3d 773, 775 (7th Cir. 1998).

8

average monthly balance of that account, whichever is greater. *Id.* Once the initial partial filing fee has been paid, prisoners must then make monthly payments until they satisfy the full fee. *Id.*

Rule 24(a) of the Federal Rules of Appellate Procedure addresses the proper steps for seeking in forma pauperis status on appeal. *See* Fed. R. App. P. 24(a). It states that a litigant must first file a motion for in forma pauperis status in the district court, attaching an affidavit describing the litigant's inability to pay. *See id.* If that motion is granted, the litigant may proceed on appeal with prepaying fees, unless a statute provides otherwise. *Id.* If that motion is denied, the litigant may then file a motion in the court of appeals to proceed in forma pauperis. *See id.*

### C.    Petitioners Seek In Forma Pauperis Status On Appeal.

In this consolidated appeal, five petitioners seek to proceed in forma pauperis without prepayment of a partial appellate filing fee.

#### 1.  Petitioner Timmie D. Cole, Sr.

In 2003, Timmie D. Cole, Sr., was convicted of possession with intent to distribute cocaine and conspiracy to distribute cocaine. Memorandum Opinion, RE1 4, Page ID #31. Based on his prior convictions, he received a mandatory minimum sentence of life in prison. *See id.* Cole filed a direct appeal to the Eighth Circuit, which affirmed. *See id.* Cole later filed a Section 2255 motion and other motions for relief, which were denied. *See id.*

9

Cole filed this Section 2241 petition in the Eastern District of Kentucky, paying the $5 docketing fee in full. *See* Filing Receipt, RE1 3, Page ID #30. Cole challenges the imposition of his mandatory life sentence based on his prior drug convictions. Memorandum Opinion, RE1 4, Page ID #32. The district court denied Cole's petition, concluding that his claims were not cognizable in a Section 2241 petition and were without merit, *see id.* at 32-34, and Cole appealed to this Court. *See* Notice of Appeal, RE1 6, Page ID #36.[5]

Cole filed a motion in the district court to proceed in forma pauperis on appeal. *See* In Forma Pauperis Motion, RE1 9 to 9-1, Page ID #51-56; In Forma Pauperis Motion, RE1 11, Page ID #68-74. The district court granted the motion in part, finding that about $149 per month was deposited in Cole's inmate trust fund account and that "Cole has sufficient funds to pay a portion of the $505.00 appellate filing fee," but that "requiring Cole to pay the whole filing fee may be unduly burdensome in light of his limited financial resources." In Forma Pauperis

---

[5] In all five consolidated appeals, the district courts concluded that petitioners' claims were not cognizable under Section 2241 and should instead have been brought under Section 2255. In some situations—such as where a litigant files a civil rights claim in the guise of a habeas petition—courts have first determined the true nature of the suit before evaluating the litigant's entitlement to in forma pauperis status. *See Walker v. O'Brien*, 216 F.3d 626, 634 n.4 (7th Cir. 2000) (instructing district courts to "look beyond the label the petitioner attaches to his pleading to ensure that the proper procedural regime is followed"). As explained in this brief, however, courts lack authority to impose partial filing fees for both Section 2241 petitions and Section 2255 motions, so however petitioners' claims are characterized, the imposition of a partial filing fee is improper.

Order, RE1 12, Page ID #78-79.  The district court ordered Cole to pay a partial fee of $50 within 28 days.  *See id.*  Cole filed a motion in this Court to proceed in forma pauperis on appeal, stating that he cannot pay the partial filing fee.  *See* In Forma Pauperis Motion, No. 17-6333, Dkt. 14 (Dec. 28, 2017).

### 2. *Petitioner Jose Adrian Hernandez*

In 2005, Jose Adrian Hernandez was indicted for possession with intent to distribute heroin and conspiracy to possess with intent to distribute heroin.  *See* Memorandum Opinion, RE2 15, Page ID #197.  He pleaded guilty pursuant to a plea agreement, and as a result of his prior drug offenses, he was sentenced to life in prison.  *See id.* at 198.  Hernandez appealed to the Fifth Circuit, but his appeal was dismissed.  *See id.*  Hernandez also filed a motion to vacate his sentence under Section 2255, which was denied.  *See id.*

Hernandez filed this Section 2241 petition in the Eastern District of Kentucky, paying the $5 docketing fee in full.  *See* Filing Receipt, RE2 8, Page ID #115.  Hernandez argues that the enhancement of his sentence based on prior drug offenses violated his due process and equal protection rights.  Memorandum Opinion, RE2 15, Page ID #198-199.  The district court denied Hernandez's petition, concluding that his claims were not cognizable in a Section 2241 petition and were without merit, *see id.* at 199-203, and Hernandez appealed to this Court. *See* Notice of Appeal, RE2 19, Page ID #221.

11

Hernandez moved in the district court to proceed in forma pauperis on appeal. *See* In Forma Pauperis Motion, RE2 17, Page ID #205-210. The district court granted the motion in part, finding that almost $500 per month was deposited in Hernandez's inmate trust fund account, and that Hernandez "has enough money to pay a significant portion of the $505.00 appellate filing fee," but that "the Court has not found that his appeal is frivolous, and making Hernandez pay the whole filing fee would be unduly burdensome in light of his limited financial resources." In Forma Pauperis Order, RE2 21, Page ID #226-227. The district court ordered Hernandez to pay a partial fee of $350 within 28 days. *See id.* at 227. Hernandez moved in this Court to proceed in forma pauperis on appeal, stating that he cannot pay the partial filing fee. In Forma Pauperis Motion, No. 17-6213, Dkt. 6 (Dec. 4, 2017); *see also* Renewed In Forma Pauperis Motion, No. 17-6213, Dkt. 15 (Jan. 29, 2018).

### 3. Petitioner Stephon Mason

Stephon Mason was convicted of conspiracy, drug trafficking, money laundering, and being a felon in possession of a firearm, among other charges. *See* Memorandum Opinion, RE3 16, Page ID #179-180. As a result of his prior drug convictions, Mason qualified as a career offender, and he was sentenced to life in prison. *See id.* Mason appealed, and the Fourth Circuit affirmed. *See id.* at 180.

Mason filed this Section 2241 petition, paying the $5 filing fee in full. Filing Receipt, RE3 9, Page ID #94. Mason argues that the enhancement of his sentence based on his prior convictions violated his due process and equal protection rights. *See* Memorandum Opinion, RE3 16, Page ID #180. The district court denied the petition, holding that Mason's claims were not cognizable under Section 2241 and lacked merit, *see id.* at 180-185, and Mason appealed to this Court. *See* Notice of Appeal, RE3 18, Page ID #187.

Mason moved in the district court to proceed in forma pauperis on appeal. *See* In Forma Pauperis Motion, RE3 22, Page ID #205-210. The district court granted Mason's motion in part, stating that Mason received about $1,000 per month in his inmate trust fund account and thus "has more than sufficient funds to pay the bulk of the appellate filing fee." In Forma Pauperis Order, RE3 24, Page ID #230. The District Court ordered Mason to pay a partial fee of $400 within 28 days. *See id.* Mason moved in this Court to proceed in forma pauperis on appeal. *See* In Forma Pauperis Motion, No. 17-6166, Dkt. 9 (Oct. 30, 2017).

### 4.  *Petitioner Arnulfo Torres Perez*

In 2011, Arnulfo Torres Perez was indicted on drug conspiracy charges. *See* Memorandum Opinion, RE4 17, Page ID #156. The government filed a notice stating that Perez was subject to an enhanced sentence in light of a prior conviction for conspiracy to traffic in methamphetamine. *See id.* Perez pleaded guilty, and he

was sentenced to 20 years in prison under a mandatory-minimum statute that took into account his prior conviction. *See id.* at 156-157. In his plea agreement, Perez stated that he waived the right to appeal or collaterally attack his conviction or sentence. *See id.* Perez did not file a direct appeal, but he later filed a Section 2255 motion, which was denied. *See id.* at 157.

Perez then filed this Section 2241 petition, paying the $5 filing fee in full. *See* Filing Receipt, RE4 7, Page ID #51. Perez argues that the enhancement of his sentence based on his prior conviction violated his due process and equal protection rights. *See* Memorandum Opinion, RE4 17, Page ID #157. The district court denied the petition, holding that as part of his plea agreement, Perez expressly waived his right to collaterally attack his conviction and sentence. *See id.* at 157-158. The district court also held that Perez's claims were not cognizable in a Section 2241 petition and were without merit, *see id.* at 158-162, and Perez appealed to this Court. *See* Renewed Notice of Appeal, RE4 23, Page ID #182.

Perez moved in the district court to proceed in forma pauperis on appeal. *See* In Forma Pauperis Motion, RE4 26 to 26-1, Page ID #196-202. The district court granted the motion in part, finding that Perez received over $600 per month in his inmate trust fund account, and that "he has more than sufficient funds to pay the bulk of the appellate filing fee." In Forma Pauperis Order, RE4 28, Page ID #212. The district court ordered Perez to pay a partial fee of $400 within 28 days.

14

*See id.* Perez moved in this Court to proceed in forma pauperis on appeal. *See* In

Forma Pauperis Motion, No. 17-6299, Dkt. 7 (Nov. 28, 2017).

   *5. Petitioner David Samarripa*

   In 2011, Samarripa was indicted for conspiracy to possess with intent to

distribute cocaine and heroin. Memorandum Opinion, RE5 16, Page ID #180-181.

The United States filed a notice that Samarripa's sentence was subject to

enhancement based on a prior felony drug conviction. *Id.* at 181. Samarripa

pleaded guilty without a plea agreement, and as a result of his prior conviction, he

was sentenced to a mandatory minimum of 20 years in prison. *Id.* Samarripa did

not file a direct appeal, but he later moved to vacate, set aside, or correct his

sentence under Section 2255. *See id.* The lower court denied Samarripa's motion,

and the Fifth Circuit dismissed his appeal as untimely. *See id.* Samarripa's

subsequent challenges to his sentence have been unsuccessful. *See id.* at 181-182.

   Samarripa filed this Section 2241 petition in the Eastern District of

Kentucky, paying the $5 filing fee in full. *See* Filing Receipt, RE5 9, Page ID #81.

He argues that his sentence was improperly enhanced as a result of his prior drug

conviction. *See* Memorandum Opinion, RE5 16, Page ID #182. The district court

denied the petition, concluding that Samarripa's claim was not cognizable under

Section 2241 and lacked merit, *see id.* at 183-185, and Samarripa appealed to this

Court. *See* Notice of Appeal, RE5 19, Page ID #193.

Samarripa moved in the district court to proceed in forma pauperis on appeal. In Forma Pauperis Motion, RE5 27 to 27-1, Page ID #225-231. The district court granted Samarripa's motion in part, stating that "[t]he financial documents accompanying Samarripa's motion indicate that he has sufficient funds to pay a portion of the $505.00 appellate filing fee," but that "requiring Samarripa to pay the whole filing fee would be unduly burdensome in light of his limited financial resources." In Forma Pauperis Order, RE5 29, Page ID #243-244. The district court ordered Samarripa to pay a partial fee of $50 within 28 days. *See id.* Samarripa filed a motion in this Court to proceed in forma pauperis. *See* Renewed In Forma Pauperis Motion, No. 17-6048, Dkt. 8 (Oct. 23, 2017).

### D. The Consolidation Of Petitioners' Cases And Appointment Of Pro Bono Counsel.

Petitioners' cases present the issue "whether the statutes governing the payment of fees and pauper status, including the Prison Litigation Reform Act, authorize the imposition of a partial filing fee in an appeal of a § 2241 petition." Order, No. 17-6048, Dkt. 19-1, at 1-2 (Apr. 24, 2018). This Court consolidated petitioners' cases to resolve that common issue, and appointed pro bono counsel "to file a global brief that addresses whether the assessment of a partial appellate filing fee is consistent with the statutory authority governing fees and otherwise within the authority of the district court in this posture." *Id.* at 2. Pro bono counsel respectfully submits this brief in compliance with the Court's order.

## SUMMARY OF ARGUMENT

I.     Traditional tools of statutory interpretation demonstrate that Congress did not intend for the PLRA's partial filing fee regime to apply to Section 2241 petitions.  The PLRA states that prisoners who file "civil" actions must pay an initial partial filing fee, followed by monthly installments until the fee is paid in full.  *See* 19 U.S.C. § 1915(b).  Habeas petitions, however, are not "civil" actions, as that term is used in the PLRA.  As the Supreme Court has held, habeas proceedings are unique, and they are "not automatically subject to all the rules governing ordinary civil actions."  *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971).  Because the text of Section 1915(b) nowhere mentions habeas petitions— much less Section 2241 petitions—this Court should hold that the PLRA does not apply to such petitions.

The structure of the PLRA confirms that conclusion.  The PLRA tightly circumscribes the ability of prisoners to file new "civil" suits after bringing multiple, frivolous actions.  19 U.S.C. § 1915(g).  If a habeas proceeding qualified as a civil suit, then a prisoner with a history of prior frivolous lawsuits would be unable to seek habeas relief.  As this Court has held, such a conclusion would be "absurd."  *Kincade*, 117 F.3d at 950-951.  When Congress adopted the PLRA, it was concerned with deterring prisoners from filing frivolous civil rights actions. The legislative history of the PLRA nowhere suggests that Congress intended to

erect new roadblocks to filing habeas petitions. If Congress had wanted habeas petitioners to comply with the partial filing fee requirements of Section 1915(b), moreover, presumably it would have said so when it enacted AEDPA—which directly addresses habeas actions—just two days before it passed the PLRA.

Applying these traditional tools of statutory interpretation, this Court has held that the PLRA's partial filing fee requirements do not apply to habeas actions filed under Section 2254 or motions filed under Section 2255. *See Kincade*, 117 F.3d at 950-951. There is no basis for treating Section 2241 petitions any differently. Section 2241 petitions seek habeas relief, just like Section 2254 petitions and Section 2255 motions. This Court should accordingly hold that petitioners are not required to comply with the partial filing fee requirements of the PLRA.

II.    Because the PLRA does not apply, petitioners' in forma pauperis motions are governed by 28 U.S.C. § 1915(a). That provision states that litigants may file suit, or appeal, "without prepayment of fees or security therefor," as long as they "submit[ ] an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." *Id.* Section 1915(a) accordingly grants courts authority to permit a litigant to proceed without the payment of filing fees, or not. It does not grant courts authority to require the payment of *partial* filing fees, as the district courts did here.

Once again, traditional tools of statutory interpretation demonstrate that Congress did not authorize courts to impose partial filing fees on habeas petitioners. The text of Section 1915(a) nowhere mentions partial filing fees, or in any way suggests that courts may impose such fees. Instead, Section 1915 describes three situations where litigants are *not* permitted to proceed in forma pauperis: Prisoners who fail to submit an affidavit, who file a "civil" suit, or who appeal in bad faith, are not entitled to the benefits of the in forma pauperis statute. *See* 28 U.S.C. 1915(a)-(b). Congress did not provide that prisoners who can afford to pay part—but not all—of the filing fees are not entitled to in forma pauperis status, and must instead pay a partial fee. This Court should accordingly decline to read such an exception into the statute, particularly when Congress has already specified certain exceptions.

The structure and purpose of Section 1915 likewise demonstrate that courts are not authorized to impose partial filing fees on habeas petitioners. Section 1915(b) creates an elaborate fee scheme for prisoners who bring "civil" suits. Section 1915(a) does not create any similar scheme for habeas petitioners. If Congress had wanted to authorize courts to impose partial filing fees under Section 1915(a), presumably it would have done so at the time it enacted Section 1915(b). It did not. Nor did Congress create a partial filing fee regime under AEDPA, despite placing other significant limitations on habeas petitioners. The stark

contrast between Sections 1915(a) and (b), and the legislative history of the PLRA and AEDPA, strongly suggest that Congress did not intend to permit courts to impose partial filing fees on habeas petitioners.

The Supreme Court, moreover, has examined whether courts may impose additional requirements—not found in the text of Section 1915 itself—on litigants seeking in forma pauperis status on appeal.  In *Adkins*, the Supreme Court examined whether courts could require a litigant's *attorney* to submit an affidavit of indigency before permitting the litigant to proceed in forma pauperis on appeal. *See* 335 U.S. at 340-344.  The Supreme Court found that the statute did not require an affidavit of indigency from an attorney, and that courts accordingly could not impose such a requirement.  *See id.* at 344.  The same is true here:  Section 1915(a) does not authorize courts to impose partial filing fees, so they may not do so.  The text of Rule 24(a) of the Federal Rules of Appellate Procedure similarly confirms this point.  *See Garza v. Thaler*, 585 F.3d 888 (5th Cir. 2009) (per curiam).

The analysis that courts have employed to justify the imposition of partial fees, moreover, is fundamentally flawed.  Some courts have held that they may impose a partial fee because the "greater" power to require a full fee includes the "lesser" power to require a partial fee.  But that is simply wrong:  The power to select the amount the court *thinks* a litigant should pay—anywhere from $0 to the full filing fee—is far greater than the power to choose between a full fee and no fee

at all.  Other courts have held that it is appropriate to require payment of a partial filing fee in order to deter frivolous lawsuits or make litigants pay a larger portion of the costs of adjudicating their case.  It is not the role of the courts, however, to make such policy judgments.  That is up to Congress.  And Congress has explicitly considered whether to impose partial filing fees on prisoners, and it has chosen not to impose such fees on habeas petitioners.

This Court should accordingly conclude that courts are not authorized to impose partial filing fees on Section 2241 petitioners, and that petitioners' appeals may proceed without the payment of such fees.

## STANDARD OF REVIEW

This Court reviews *de novo* the legal question whether courts have authority to require a partial appellate filing fee for habeas petitions brought pursuant to 28 U.S.C. § 2241.  *See generally Harries v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005) (legal issues reviewed *de novo*).

## ARGUMENT

## I.  THE PLRA'S FILING FEE PROVISIONS DO NOT APPLY TO SECTION 2241 PETITIONS, WHICH ARE NOT "CIVIL" ACTIONS.

The PLRA imposes partial filing fee requirements on "civil" actions brought by prisoners.  28 U.S.C. § 1915(b)(1).  In petitioners' cases, the district courts uniformly concluded that Section 2241 petitions are not "civil" actions for purposes of the PLRA, and that the PLRA's partial filing fee regime accordingly

did not apply. The district courts are correct. Under longstanding precedent, as well as the text, structure, and purpose of the PLRA, the PLRA's partial filing fee requirements do not apply to Section 2241 petitions.

## A.    The PLRA's Partial Filing Fee Regime Does Not Govern Habeas Petitions.

As this Court has held, the PLRA's filing fee requirements do not apply to habeas petitions. *Kincade*, 117 F.3d at 950-951 (addressing Section 2254 petitions and Section 2255 motions); *see also McGore v. Wigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997) (same). That conclusion is confirmed by traditional tools of statutory interpretation: The text of the PLRA's filing fee provisions does not mention habeas petitions, the structure of the PLRA demonstrates that habeas petitions are not "civil" actions, and Congress's purpose in adopting the PLRA had nothing to do with habeas suits.

### 1.    *Habeas Petitions Are Not "Civil" Actions, As That Term Is Used In The PLRA.*

The PLRA's fee requirements apply to "civil" actions. 28 U.S.C. § 1915(b). Habeas petitions are sometimes referred to as "civil" actions in order to distinguish them from "criminal" actions. *See Fisher v. Baker*, 203 U.S. 174, 181 (1906). Labeling a habeas petition a "civil" action, however, "is gross and inexact." *Harris v. Nelson*, 394 U.S. 286, 293-294 (1969). As the Supreme Court has repeatedly held, because habeas corpus proceedings are "unique," "[h]abeas corpus

22

practice in the federal courts has conformed with civil practice only in a general sense." *Id.* at 294; *see also Martin v. United States*, 96 F.3d 853, 855 (7th Cir. 1996) ("[H]abeas corpus is more accurately regarded as being sui generis."). Habeas actions are accordingly "not automatically subject to all the rules governing ordinary civil actions." *Schlanger*, 401 U.S. at 490 n.4; *see also Santana v. United States*, 98 F.3d 752, 754-755 (3d Cir. 1996) (listing examples where habeas proceedings are not treated as civil actions).

For example, in *Harris*, the Supreme Court examined whether federal discovery rules for "civil" cases applied to habeas actions. *See* 394 U.S. at 292-294. The Supreme Court concluded that they did not. As the Supreme Court explained, habeas proceedings are unique, and "it is difficult to believe that the draftsmen of the Rules or Congress would have applied the discovery rules without modification to habeas corpus proceedings because their specific provisions are ill-suited to the special problems and character of such proceedings." *Id.* at 296. The Supreme Court emphasized that it had "no power to decide" that discovery rules for civil actions apply to habeas suits "unless, on conventional principles of statutory construction, we can properly conclude that the literal language or the intended effect of the Rules indicates that this was within the purpose of the draftsmen or the congressional understanding." *Id.* at 298.

In *Schlanger*, the Supreme Court similarly analyzed whether a statute providing for nationwide service of process in "civil" suits against officers or employees of the United States applied in habeas actions. *See* 401 U.S. at 490 n.4. The Supreme Court explained that "[t]hough habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions." *Id.* Because "the legislative history" of the statute "is barren of any indication" that Congress intended it to apply to habeas actions, the Supreme Court concluded that it did not. *See id.*

In *O'Neal v. McAninch*, 513 U.S. 432 (1995), the Supreme Court likewise evaluated whether the burden of showing prejudice in a habeas action falls on the petitioner—as in some "civil" actions—or whether a different standard applies. *See id.* at 440. The Supreme Court found that although habeas proceedings are "technically" civil in nature, "the errors being considered by a habeas court occurred in a *criminal* proceeding, and therefore, although habeas is a civil proceeding, someone's custody, rather than mere civil liability is at stake." *Id.* The Supreme Court accordingly applied a different framework for evaluating prejudice in habeas actions. *See id.* at 440-442.

Under these precedents, Section 1915(b)'s reference to "civil" actions does not by itself encompass habeas petitions. Instead, more is required: The "literal language" of the statute, its "intended effect," or its legislative history must

24

demonstrate that Congress intended for Section 1915(b) to govern habeas petitions. *Harris*, 394 U.S. at 298. None of those requirements is met here.

### 2. The Text Of The PLRA Does Not Refer To Habeas Petitions.

Section 1915(b) states that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee," including an initial partial filing fee and additional monthly payments. 28 U.S.C. § 1915(b). The text of that provision nowhere mentions habeas petitions, or otherwise suggests that it applies to them. Because the "literal language" of Section 1915(b) does not encompass habeas actions, the PLRA's partial filing fee requirements do not apply to those actions. *Harris*, 394 U.S. at 298.[6]

### 3. The Structure Of The PLRA Demonstrates That Its Fee Provisions Do Not Apply To Habeas Actions.

The structure of the PLRA confirms that Section 1915(b)'s reference to "civil" actions does not include habeas petitions. *See Walton v. Hammons*, 192 F.3d 590, 595 (6th Cir. 1999) ("[T]he plain meaning that we seek to discern is the plain meaning of the whole statute, not of isolated sentences." (internal quotation

---

[6] Section 1915(b) applies where "a prisoner brings a civil action or files an appeal in forma pauperis." 28 U.S.C. § 1915(b)(1). A number of courts have examined whether the word "civil" modifies both "action" and "appeal," and have concluded that it does. *See, e.g.*, *Blair-Bey v. Quick*, 151 F.3d 1036, 1040 n.2 (D.C. Cir. 1998) ("The word 'appeal' in the statute does not reach all appeals, but only appeals in civil actions."); *Martin*, 96 F.3d at 854.

marks omitted)).  Section 1915(g)—also enacted as part of the PLRA—states that "[i]n no event shall a prisoner bring a *civil* action or appeal a judgment in a *civil* action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim."  28 U.S.C. § 1915(g) (emphases added).  If a habeas petition is a "civil" action for purposes of the PLRA, then under Section 1915(g), a prisoner who had previously filed three frivolous civil actions would be unable to seek habeas relief.

This Court has held that it would be "absurd" to conclude that the PLRA "eradicate[d] habeas relief for prisoners who have a history of groundless civil suits." *Kincade*, 117 F.3d at 950-951; *see also Martin*, 96 F.3d at 855-856 (such a result "would be contrary to a long tradition of ready access of prisoners to federal habeas corpus").  As the D.C. Circuit has explained, "[i]f habeas petitions count as 'civil actions' for PLRA purposes, then a penniless inmate who has managed to incur three strikes would apparently have no way of seeking a writ of habeas corpus—even if, for instance, prison officials arbitrarily declined to release him at the end of his sentence." *Blair-Bey v. Quick*, 151 F.3d 1036, 1041 (D.C. Cir. 1998) (footnote omitted).

Indeed, concluding that the PLRA's three strikes policy applies to habeas actions could raise a constitutional problem. The writ of habeas corpus is an essential means of protecting individual liberty against arbitrary government. *See Boumediene*, 553 U.S. at 743-744. Restricting access to the writ based on a prisoner's prior conduct in other, unrelated litigation would infringe basic constitutional protections for prisoners. Because Congress could not have intended Section 1915(g)'s reference to "civil" actions to include habeas petitions, it is plain that Section 1915(b)'s reference to "civil" actions does not do so either.

The structure of the partial filing fee mechanism created by the PLRA itself, moreover, demonstrates that it was not intended to apply to habeas actions. The filing fee in the district court for a habeas action is $5. *See* 28 U.S.C. § 1914(a). The elaborate system specified in Section 1915(b) for collecting an initial partial filing fee, followed by monthly installments of the remainder of the fee, makes little sense in the context of a de minimis payment. As petitioners' cases demonstrate, many prisoners can afford to pay a $5 fee up front in order to file suit, negating the need for collecting that fee over time. Because the partial filing fee collection mechanism in Section 1915(b) makes little sense when applied to habeas

actions—at least at the initial filing stage—this Court should not assume that Congress intended that mechanism to apply.[7]

### 4. The Purpose Of The PLRA Was To Stem The Tide Of Prisoner Civil Rights Litigation, Not To Erect Barriers To Habeas Relief.

The widely acknowledged purpose of the PLRA was to address the perceived problem of frivolous civil rights lawsuits filed by prisoners. *See Kincade*, 117 F.3d at 951. The floor debates and hearing concerning the PLRA focused on examples of lawsuits raising "petty grievances" about prison conditions, "such as insufficient locker space and the service of creamy rather than chunky peanut butter." *Id.* (citing 141 Cong. Rec. S7524 (daily ed. May 25, 1995)); *see also Jones v. Smith*, 720 F.3d 142, 147 (2d Cir. 2013) (discussing legislative history). Congress accordingly crafted an elaborate scheme for collecting partial fees from prisoners in order to deter such lawsuits.

Congress did not have the same purpose, however, with respect to habeas actions. The legislative history of the PLRA does not address habeas petitions at all. *See Kincade*, 117 F.3d at 951; *Jones*, 720 F.3d at 147. As this Court has noted, "[a]midst all of the hue and cry over the alarming growth of prisoner civil rights litigation, the legislative history of the [PLRA] does not contain a single complaint or example concerning postconviction criminal proceedings." *Kincade*,

---

[7] The appellate filing fee in habeas actions is more significant. There is no evidence, however, that Congress intended the PLRA to apply to appellate filing fees but not initial filing fees in habeas proceedings.

117 F.3d at 951; *see also Blair-Bey*, 151 F.3d at 1040 ("Nowhere in the PLRA's legislative history is there any reference to cases challenging the fact or duration of confinement."). Because Congress did not view habeas actions as part of the problem it was trying to correct by enacting the PLRA, it did not include those actions in the partial filing fee regime for civil suits.

### 5. Congress's Adoption Of AEDPA Further Demonstrates That It Did Not Intend To Create A Partial Filing Fee Regime For Habeas Actions.

Two days before it adopted the PLRA, Congress enacted AEDPA. AEDPA is "specifically tailored to address habeas corpus petitions," yet it does not create any mechanism for collecting partial filing fees from habeas petitioners. *Kincade*, 117 F.3d at 951. As this Court has held, "had Congress intended to amend the [partial filing fee regime] to include postconviction petitions, [AEDPA] would have presented the perfect forum." *Id.* The fact that Congress passed a law directly addressing habeas petitions *two days before* the PLRA, but did not adopt a partial filing fee regime in either AEDPA or the PLRA, strongly suggests that Congress did not intend for habeas petitions to be subject to the PLRA's fee requirements.

In sum, text, structure, and purpose—as well as longstanding Supreme Court precedent—all demonstrate that the PLRA's partial filing fee regime for "civil"

suits does not apply to habeas actions.  Every court of appeals to have considered the issue, including this one, has reached that same conclusion.[8]

### B.  The PLRA Does Not Apply To Section 2241 Petitions, Which Are Habeas Actions.

This Court has held that the PLRA's partial filing fee requirements do not apply to habeas actions under Section 2254 or motions under Section 2255.  *See Kincade*, 117 F.3d at 952.  It has explicitly reserved whether "actions filed pursuant [to] 28 U.S.C. § 2241" are similarly exempt.  *Id.*; *see also Graham v. U.S. Parole Comm'n*, 132 F.3d 33 (6th Cir. Dec. 8, 1997) (Table), 1997 WL 778515, at *1 (holding in an unpublished opinion that a Section 2241 petition is not subject to the PLRA's filing fee requirements).  There is no principled basis for concluding that the PLRA applies to some kinds of habeas actions but not others.  This Court should accordingly conclude that the PLRA's filing fee provisions do not apply to Section 2241 petitions.

All of the justifications for exempting Section 2254 and 2255 actions from the fee provisions of the PLRA apply in equal measure to Section 2241 actions.

---

[8] *See Martin v. Bissonette*, 118 F.3d 871, 874 (1st Cir. 1997); *Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir. 1996); *Santana v. United States*, 98 F.3d 752, 756 (3d Cir. 1996); *Smith v. Angelone*, 111 F.3d 1126, 1131 (4th Cir. 1997); *United States v. Cole*, 101 F.3d 1076, 1077-78 (5th Cir. 1996); *Kincade v. Sparkman*, 117 F.3d 949, 950-952 (6th Cir. 1997); *Martin v. United States*, 96 F.3d 853, 855 (7th Cir. 1996); *Malave v. Hedrick*, 271 F.3d 1139, 1139-40 (8th Cir. 2001) (per curiam); *Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir. 1997); *United States v. Simmonds*, 111 F.3d 737, 743 (10th Cir. 1997); *Anderson v. Singletary*, 111 F.3d 801, 805 (11th Cir. 1997); *Blair-Bey v. Quick*, 151 F.3d 1036, 1039-41 (D.C. Cir. 1998).

Section 2241 is a mechanism for granting "[w]rits of habeas corpus." 28 U.S.C. § 2241(a). Like Sections 2254 and 2255, Section 2241 is accordingly a "habeas corpus statute[ ]." *Preiser v. Rodriguez*, 411 U.S. 475, 482 (1973); *see also id.* at 486-487 (drawing no distinction between different kinds of habeas actions). As the Seventh Circuit has explained, a habeas petition "is the same animal, regardless of the grounds the detained person is advancing in it." *Walker v. O'Brien*, 216 F.3d 626, 636 (7th Cir. 2000). Thus, to the extent Section 2254 petitions and Section 2255 motions are exempt from the PLRA because they are not "civil" actions, the same is true of Section 2241 petitions.

Congress's purpose in adopting the PLRA, moreover, was to address frivolous civil rights actions filed by prisoners. *Kincade*, 117 F.3d at 951. Petitioners here challenge their sentences as unlawful. *See supra* pp.9-16. That is not the kind of suit that Congress was concerned about when it adopted the PLRA. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) ("A habeas corpus proceeding attacks the fact or duration of a prisoner's confinement," whereas a civil rights action "attacks the conditions of the prisoner's confinement." (internal quotation marks omitted)). The same structural arguments—that Congress could not have intended to bar prisoners with a history of filing frivolous suits from seeking habeas relief, and could not have intended to erect a complex system for collecting a $5 filing fee—apply equally with respect to Section 2241,

31

2254, and 2255 actions. And Congress's adoption of AEDPA, which does not create a partial filing fee regime for Section 2241, 2254, or 2255 actions, further suggests that Congress did not intend for such a regime to apply to those actions.

The courts of appeals that have considered the issue, moreover, agree that Section 2241 petitions are exempt from the PLRA's filing fee requirements.[9] The Second Circuit, for instance, has stated that it is "[d]oubtless" that "the same rule should obtain in § 2241 cases as in § 2254 petitions." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). The Seventh Circuit has similarly concluded that "if a case is properly filed as an action under 28 U.S.C. §§ 2241, 2254, or 2255, it is not a 'civil action' to which the PLRA applies." *Walker*, 216 F.3d at 634. And the Tenth Circuit has stated that "[t]he factors . . . that led us to conclude § 2254 and § 2255 proceedings are not 'civil actions' under the PLRA apply with equal force to § 2241 proceedings." *McIntosh*, 115 F.3d at 811. This Court should join its sister circuits and hold that the PLRA's fee requirements do not apply to Section 2241 petitions.

---

[9] *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); *McGee v. Scism*, 463 F. App'x 61, 65 (3d Cir. 2012) (per curiam); *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998); *Walker v. O'Brien*, 216 F.3d 626, 633-634 (7th Cir. 2000); *Malave v. Hedrick*, 271 F.3d 1139, 1139-40 (8th Cir. 2001) (per curiam); *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997); *Harris v. Garner*, 216 F.3d 970, 979 n.7 (11th Cir. 2000); *Blair-Bey v. Quick*, 151 F.3d 1036, 1040 (D.C. Cir. 1998).

## II.   COURTS ARE NOT AUTHORIZED TO IMPOSE PARTIAL APPELLATE FILING FEES ON SECTION 2241 PETITIONERS.

The text, structure, and purpose of the federal in forma pauperis statute demonstrate that courts are authorized only to grant or deny in forma pauperis status, and are not permitted to impose partial filing fees.  As the Supreme Court has held, courts may not impose new requirements on litigants not found in the text of the in forma pauperis statute itself.  *See Adkins*, 335 U.S. at 340-344.  Courts that have concluded otherwise rely on one of two rationales:  That the "greater" power to impose a full filing fee includes the "lesser" power to impose a partial filing fee, or that litigants should be disincentivized from filing frivolous suits or should bear a greater portion of the expense of adjudication.  Both rationales are fundamentally flawed and should not be relied upon by this Court.  This Court should instead join the Fifth Circuit and hold that courts *do not* have authority to impose a partial appellate filing fee on habeas petitioners.  *See Garza*, 585 F.3d at 888-890.

### A. Text, Structure, Purpose, and Precedent Demonstrate That Courts Are Not Authorized To Impose Partial Filing Fees.

*1. The Text Of Section 1915(a) Does Not Authorize Partial Filing Fees.*

It is a well-accepted principle of statutory interpretation that "Congress says what it means and means what it says."  *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1848 (2016).  Section 1915(a) states that "[s]ubject to subsection (b), any court of

the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, *without prepayment of fees* or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1) (emphasis added). Section 1915(a) thus gives courts two options: The court may require a litigant to pay the full filing fee, or it may permit the litigant to proceed "without prepayment of fees." *Id.* The text of Section 1915(a) nowhere mentions partial filing fees, or in any way suggests that courts are authorized to impose such fees. Under the plain text of Section 1915(a), courts therefore cannot require them.

Section 1915, moreover, specifies three situations in which a litigant is not entitled to in forma pauperis status. First, a court may not authorize a litigant to proceed in forma pauperis if a litigant fails to "submit[ ] an affidavit." *Id.* Second, a court may not grant in forma pauperis status if doing so would be inconsistent with Section 1915(b). *See id.* Section 1915(b) in turn provides that a court may not grant in forma pauperis status to a prisoner in a civil suit. *See id.* § 1915(b)(1). Third, a court may not grant in forma pauperis status on appeal "if the trial court certifies in writing that [the appeal] is not taken in good faith." *Id.* § 1915(a)(3).

As the Supreme Court has emphasized, "[w]here Congress explicitly enumerates certain exceptions . . . additional exceptions are not to be implied, in

the absence of evidence of a contrary legislative intent." *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (internal quotation marks omitted). Here, Congress explicitly considered when a prisoner is entitled to proceed in forma pauperis on appeal. A prisoner who does not submit an affidavit, or who files a civil suit, or who appeals in bad faith, is not entitled to such status. Congress did not create a similar exception for prisoners who can afford to pay part—but not all—of the appellate filing fee in a habeas action. This Court should accordingly apply the text of Section 1915(a) as written and conclude that petitioners may appeal without payment of a partial fee.

### 2. *The Structure Of Section 1915 Establishes That Congress Did Not Authorize Courts To Impose Partial Fees.*

The structure of Section 1915 further confirms that Congress did not authorize courts to impose partial filing fees in habeas actions. The contrast between Sections 1915(a) and (b) is stark: Section 1915(b) creates a complex mechanism for collecting partial filing fees from prisoners in civil actions. It states that the "court shall assess, and when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—(A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal." 28 U.S.C. § 1915(b)(1). After the payment of the initial partial filing fee, prisoners must then

"make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Id.* § 1915(b)(2). Section 1915(a), in contrast, permits courts to grant in forma pauperis status to habeas petitioners—or to deny that status—but it does not provide for the collection of any fees that fall in-between.

"Just as Congress' choice of words is presumed to be deliberate, so too are its structural choices." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013). The fact that Congress did not adopt a partial filing fee scheme in Section 1915(a)—despite the close proximity of that provision to Section 1915(b)— establishes that Congress did not authorize courts to impose partial filing fees in habeas cases. If Congress "had desired" to create a partial filing fee regime for habeas petitioners, "it could have used language similar to that which it invoked" in Section 1915(b). *Id.* at 354. Or, "it could have inserted" the partial filing fee requirement "as part of a section that applies to all" prisoner suits. *Id.* But Congress "did neither of those things," and the courts must accordingly "give effect to Congress' choice." *Id.* (internal quotation marks omitted). The only way to give effect to that choice is to hold that courts are *not* permitted to impose partial filing fees on habeas petitioners.

3. *The Legislative History Of The PLRA And The Adoption Of AEDPA Demonstrate That Congress Did Not Intend For Habeas Petitioners To Pay Partial Fees.*

The same evidence that demonstrates that Congress did not intend for the PLRA to apply to habeas suits also demonstrates that Congress did not intend to authorize courts to impose partial filing fees on habeas petitioners.

*First*, Congress's stated purpose in adopting the PLRA was to curb frivolous prison condition litigation. *See Kincade*, 117 F.3d at 951. Congress accordingly erected barriers to *civil* actions filed by prisoners, including by imposing partial filing fee requirements. *See id.* In contrast, Congress did not address habeas petitions as part of its debate over the PLRA—much less endorse partial fees in the habeas context. *See supra* pp.28-29. This Court should accordingly conclude that Congress did *not* intend for habeas petitioners to be subject to such fees.

*Second*, as noted, Congress set an extremely low fee ($5) for filing habeas petitions, including Section 2241 petitions. *See* 28 U.S.C. § 1914(a). Congress set that filing fee in 1948, and it has not increased it since. *See* ch. 646, 62 Stat. at 954 (adopting $5 filing fee). In that same period, Congress increased the filing fee for civil actions over two thousand percent, from $15 to $350. *See id.*; *see also* 28 U.S.C. § 1914(a) (current filing fee is $350). If Congress intended to discourage habeas petitions through financial barriers, or to recoup a greater portion of the cost of adjudicating those petitions, presumably Congress would have set a higher

initial filing fee for habeas petitions.  The fact that Congress has not done so strongly suggests that this Court should not erect new barriers for habeas petitions through the imposition of partial filing fees.[10]

*Third*, two days before adopting the PLRA, Congress enacted AEDPA. AEDPA places a number of restrictions on habeas petitioners, including restricting the number of successive habeas petitions.  *See, e.g.*, 28 U.S.C. § 2244.  AEDPA does not require habeas petitioners to pay partial filing fees, again strongly suggesting that Congress did not intend for habeas petitioners to face any such barriers to appeal.

### 4. Requiring A Partial Fee Is Inconsistent With The Supreme Court's Decision In Adkins.

In *Adkins*, the Supreme Court evaluated whether courts could impose a requirement—not found in the text of Section 1915—on litigants seeking to proceed in forma pauperis on appeal.  In that case, the plaintiff moved to appeal without payment of costs on the ground that she was impoverished.  *See* 335 U.S. at 334.  The lower court denied the motion in part because the plaintiff's attorneys had not filed affidavits stating that they were unable to pay the costs of the appeal on the plaintiff's behalf.  *See id.* at 340-41.  The Supreme Court disagreed,

---

[10] The appellate filing fee is more significant.  Many habeas petitioners are unable to pay that full fee—as was the case with all five petitioners here.  Congress may have intended that as a result of the in forma pauperis statute, in most cases habeas petitioners would not pay the hefty appellate filing fee.

explaining that "[t]he statute requires no affidavit at all" from the plaintiff's attorneys—and that requiring such an affidavit was thus improper. *Id.* at 344.

The same analysis applies in this case. As the Supreme Court stated in *Adkins*, Section 1915 "provide[s] that a court may exercise a limited judicial discretion in the *grant or denial* of the right" to appeal in forma pauperis. *Id.* at 337 (emphasis added). That limited discretion, however, does not include the power to make up new requirements not specified in the statute itself. *See id.* at 344. Just as Section 1915 does not authorize courts to require affidavits from a litigant's attorneys, it does not authorize courts to require payment of a partial filing fee. Under *Adkins*, the district courts in petitioners' cases erred by imposing such a fee—a requirement nowhere found in the text of Section 1915(a).

### 5. Imposing A Partial Fee Is Inconsistent With Rule 24 Of The Federal Rules Of Appellate Procedure.

Rule 24 of the Federal Rules of Appellate Procedure implements the federal in forma pauperis statute. Despite providing specific rules for both litigants and courts to follow, it nowhere states—or even implies—that courts may impose a partial filing fee. *See* Fed. R. App. P. 24. Instead, two different provisions of Rule 24 establish that courts are *not* permitted to do so.

*First*, Rule 24(a)(2) states that "[i]f the district court grants the motion" to proceed in forma pauperis, "the party may proceed on appeal without prepaying or giving security for fees and costs, unless a statute provides otherwise." *Id.* In

petitioners' cases, the district courts *granted* in forma pauperis status, and no statute provides otherwise.[11] Thus, under Rule 24(a)(2), petitioners *must be permitted* to appeal without prepaying fees. The Fifth Circuit has reached precisely that conclusion, stating that where a district court grants in forma pauperis status, the petitioner must be permitted to proceed on appeal without prepaying any fees—even if the district court conditioned in forma pauperis status on the petitioner's payment of a partial filing fee. *See Garza*, 585 F.3d at 890 (holding that "the district court did not have either the discretion or the inherent power" to require a partial fee similar to that imposed by the PLRA).

*Second*, Rule 24(a)(4) states that "[t]he district clerk must immediately notify the parties and the court of appeals when the district court . . . *denies a motion* to proceed on appeal in forma pauperis." *Id.* (emphasis added). Rule 24(a)(5) provides that "[a] party may file a motion to proceed on appeal in forma pauperis in the court of appeals within 30 days *after service of the notice prescribed in Rule 24(a)(4)*." *Id.* (emphasis added). If a district court grants in forma pauperis status—but nevertheless requires payment of a partial fee—it cannot provide the notice required by Rule 24(a)(4). Rule 24(a)(5) accordingly

---

[11] *See* In Forma Pauperis Order, RE1 12, Page ID #79 (Cole); In Forma Pauperis Order, RE2 21, Page ID #227 (Hernandez); In Forma Pauperis Order, RE3 24, Page ID #230 (Mason); In Forma Pauperis Order, RE4 28, Page ID #212 (Perez); In Forma Pauperis Order, RE5 29, Page ID #244 (Samarripa).

suggests that in this scenario, a litigant may not file an in forma pauperis motion in this Court. *See id.*[12]

In adopting Rule 24, the Supreme Court could not have intended such a nonsensical result. Instead, Rule 24(a)(4) plainly contemplates that the district court will grant or deny in forma pauperis status *in full*. If the district court grants in forma pauperis status in full, then the litigant has no need to file a motion for such status in this Court. If the district court denies in forma pauperis status in full, then Rule 24(a)(5) provides the mechanism for filing a new in forma pauperis motion in this Court.

In short, the text and structure of Rule 24 further confirm that courts are not permitted to act by half-measure, and must either fully grant or fully deny in forma pauperis status on appeal. This Court should hold that it was improper for the district courts to require petitioners to pay a partial appellate filing fee.

### B. The Rationales Cited By Courts For Imposing A Partial Filing Fee Are Fundamentally Flawed.

Some courts have held that they have discretion under Section 1915(a) to impose partial filing fees. *See, e.g.*, *Walker*, 216 F.3d at 638 n.5. Those courts rely

---

[12] It is possible to argue that an order granting in forma pauperis status in part qualifies as an order denying such status under Rule 24(a)(4). The Fifth Circuit, however, has interpreted a district court order granting in forma pauperis status— but imposing a partial filing fee requirement—as an order granting, rather than denying, in forma pauperis status for purposes of Rule 24. *See Garza*, 585 F.3d at 888-890.

on one of two rationales to support their conclusion. The first rationale is that the "greater" power to impose a full filing fee includes the "lesser" power to impose a partial filing fee. That reasoning, however, is fundamentally flawed: The power to impose a partial filing fee involves a *greater* exercise of discretion—and creates a *greater* barrier to suit—than the power to impose a full filing fee. The second rationale is that prisoners should be required to pay a portion of the filing fee in order to deter frivolous lawsuits and contribute to court costs. But that is ultimately a policy decision for Congress, not the courts, and such a rationale is indefensible after Congress declined to impose partial filing fees on habeas petitioners in either the PLRA or AEDPA.

1. *The Greater-Includes-The-Lesser Principle Does Not Apply Here, Where The Greater Power Is The Power To Impose A Partial Fee.*

Several courts have justified the imposition of a partial filing fee on the ground that the "power to waive the entire fee" conferred by Section 1915(a) "includes the power to waive a portion of it." *Hughes v. City of Albany*, 76 F.3d 53, 55 (2d Cir. 1996) (upholding partial filing fee in civil action filed prior to the passage of the PLRA); *see also In re Williamson*, 786 F.2d 1336, 1338 (8th Cir. 1986) (same). That argument is flawed for two reasons.

*First*, the greater-includes-the-lesser principle cannot override the plain text of Section 1915(a). To the extent canons of statutory interpretation are helpful when a statute is ambiguous, there is no ambiguity here: Section 1915(a) states

42

that a court may waive prepayment of the full filing fee, or not. It nowhere suggests that courts have discretion to impose any amount of fees, up to the filing fee set by Congress, if they so choose. This Court should enforce the plain text of Section 1915(a) as written, rather than redlining that text to permit the imposition of a partial fee. *See Garza*, 585 F.3d at 890 (finding no authority for a district court to impose a partial appellate filing fee on a habeas petitioner).

This fundamental tenet—that courts must look to the text of the statute, not to what they think the text should say—has been routinely ignored by courts that have imposed partial filing fees. In *Braden v. Estelle*, 428 F. Supp. 595 (S.D. Tex. 1977), one of the earliest cases cited for the proposition that courts may impose partial filing fees under Section 1915, the court reached its conclusion in part based on an analogy to the Criminal Justice Act. *See id.* at 599. Under that Act, a court may terminate appointed counsel if "the United States magistrate or court finds that the person is financially able to obtain counsel or to *make partial payment for the representation*." *Id.* (emphasis added; internal quotation marks omitted). The *Braden* court reasoned that because Congress intended for litigants to make partial payment for representation under the Criminal Justice Act, Congress similarly intended for litigants to pay partial filing fees. *See id.*

The error in the *Braden* court's analysis is plain: In the Criminal Justice Act, Congress explicitly stated that partial payment for representation is

appropriate. In Section 1915(a), it did not. This Court should decline to follow the *Braden* court's faulty reasoning, which is unsupported by basic principles of statutory interpretation. This Court should similarly decline to follow decisions citing *Braden* for the proposition that courts have authority to impose partial filing fees. *See, e.g.*, *Williamson*, 786 F.2d at 1338; *Collier v. Tatum*, 722 F.2d 653, 655 (11th Cir. 1983); *Evans v. Croom*, 650 F.2d 521, 524 (4th Cir. 1981).

*Second*, the greater-includes-the-lesser principle does not apply here at all. As the Supreme Court explained in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), "the proposition that greater powers include lesser ones" must be rejected where the "greater" power is not "necessarily" any greater than the supposedly "lesser" power. *Id.* at 511 (rejecting State's argument that its power to ban alcoholic beverages includes the power to restrict advertising about those beverages). Here, the power to waive all fees is *not* greater—and is instead far less—than the power to impose partial fees. Applying the greater-includes-the-lesser principle here is thus improper.

A court empowered to waive all filing fees has two options: It may waive the fees, or it may not. To determine whether to waive those fees requires a straightforward analysis. The court must assess the litigant's assets and compare those assets to the filing fee set by Congress. If the litigant has sufficient assets to pay the fee, then the court may assess the fee. If the litigant lacks sufficient assets,

then the court may permit the appeal to proceed without any payment. Thus, where the petitioner cannot afford the filing fee, the petitioner's appeal will proceed without the payment of fees.

In contrast, a court empowered to impose a partial filing fee has any number of options: It may require the payment of full fees, no fees, or any amount in-between. To determine the amount of fees to assess, the court must not only compare the litigant's assets to the filing fee set by Congress, but also determine what the court thinks the litigant *ought* to pay. Because Section 1915(a) nowhere mentions partial filing fees, it provides no guidance to the court as to the amount of fees to assess; the court must make its own determination. In many cases, the habeas petitioner will be able to pay some portion of the $505 appellate filing fee, and thus the court will require the petitioner to pay a partial filing fee.

The power to impose a partial filing fee is thus much *greater* than the power to impose a full filing fee. It requires courts to exercise discretion to determine the amount of fees to assess and, for petitioners who cannot afford the full fee but can afford some lesser fee, it creates a financial barrier to suit. It also requires courts to spend additional time and resources examining a petitioner's financial situation, determining the precise fee to impose, and ultimately collecting that fee. The fundamental justification for departing from the plain text of Section 1915(a)—that the greater power to impose a full fee includes the lesser power to impose a partial

fee—is no justification at all. This Court should reject that rationale as a basis for permitting courts to impose partial filing fees on habeas petitioners, including petitioners in this case.

### 2. It Is Up To Congress—Not The Courts—To Determine When Habeas Petitioners Should Be Required To Pay A Fee.

A second justification some courts have cited for imposing partial filing fees is that a litigant "could reasonably be asked to some small degree to 'put his money where his mouth is,' it being all too easy to file suits . . . if it costs nothing whatever to do so." *In re Stump*, 449 F.2d 1297, 1298 (1st Cir. 1971) (per curiam); *see also Longbehn v. United States*, 169 F.3d 1082, 1083-84 (7th Cir. 1999) (stating that every litigant has the responsibility to pay filing fees "to the extent feasible"); *Collier*, 722 F.2d at 655 ("By requiring a partial fee, courts force the prisoner to confront the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?" (internal quotation marks omitted)). But that is a policy judgment left to Congress, not the courts. If Congress wants to impose a partial filing fee for habeas suits, it may do so; the courts should not make that policy decision on Congress's behalf.

Prior to the adoption of the PLRA, courts began imposing partial filing fees as a means of "deter[ring] *pro se* prisoners from filing frivolous lawsuits" and to make prisoners "think twice" before filing such suits. *Hughes*, 76 F.3d at 55; *see also Collier*, 722 F.2d at 655 (discussing the "flood of *pro se* § 1983 prisoner

46

actions"). In the PLRA, however, Congress evaluated the issue and determined that partial filing fees were appropriate only for *civil* lawsuits. It did not create a partial filing fee regime for *habeas* petitions, despite the clear opportunity to do so in both the PLRA and AEDPA.

Thus, even if courts may have been justified in departing from the plain text of Section 1915 to impose a partial filing fee on habeas petitioners *prior* to the adoption of the PLRA and AEDPA—based on the assumption that Congress wanted to deter such litigation or wanted litigants to pay more of the costs of such suits—courts are not justified in doing so *after* Congress adopted the PLRA and AEDPA. Indeed, many of the courts that have held that Section 1915 permits imposition of a partial filing fee reached that conclusion *prior* to the passage of the PLRA and AEDPA and in the context of civil rights actions, or relied on precedent established *prior* to the passage of those laws. *See, e.g.*, *Longbehn*, 169 F.3d at 1083-84; *Hughes*, 76 F.3d at 55. This Court should not rely on such decisions, which fail to account for Congress's choice to adopt a partial filing fee regime only for civil rights suits filed by prisoners.

The purpose of Section 1915, moreover, "is to provide an entre, not a barrier, to the indigent seeking relief in the federal court." *Williamson*, 786 F.2d at 1338 (internal quotation marks omitted); *see also McIntosh*, 115 F.3d at 812 (distinguishing between abusive prison condition litigation and Section 2241

petitions).  This Court should not read a purpose into that statute to erect new roadblocks—not found in the text of the statute—on habeas petitioners.  The district courts below universally concluded that petitioners could not afford to pay the $505 fee to appeal their case to this Court.  *See supra* pp.9-16.  This Court should accordingly conclude that petitioners are not required to pay that fee, pursuant to the text of Section 1915(a).

### C. Pro Bono Counsel Has Not Identified Any Additional Authority That Grants Courts Discretion To Impose A Partial Filing Fee.

Pursuant to the Court's appointment order, pro bono counsel has analyzed whether other authority permits courts to impose a partial filing fee on petitioners. Counsel has not identified any such authority.  As the Seventh Circuit has held, "it is § 1915(a)(1) that supplies judges' authority to allow litigation to proceed without prepayment of the fees required by § 1913 and other statutes." *Thomas v. Zatecky*, 712 F.3d 1004, 1005 (7th Cir. 2013).  Although it may be possible to argue that courts had some kind of inherent power to permit litigants to proceed in forma pauperis prior to the adoption of the federal in forma pauperis statute in 1892, following the enactment of that statute, this Court must comply with the statute's requirements.  *See Degen v. United States*, 517 U.S. 820, 823 (1996) ("[T]he inherent powers of the courts may be controlled or overridden by statute or rule."); *see also Lonchar*, 517 U.S. at 323 (courts may not ignore relevant statutes and rules in habeas suits).  This Court should apply Section 1915 as written, and

conclude that petitioners' appeals may proceed without payment of a partial filing fee.

## CONCLUSION

For the foregoing reasons, this Court should hold that neither the lower courts nor this Court have authority to require petitioners to pay a partial appellate filing fee.

Respectfully submitted,

/s/ Katherine B. Wellington

KATHERINE B. WELLINGTON
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
katherine.wellington@hoganlovells.com

July 2, 2018                     *On Behalf of Petitioners-Appellants*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,368 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point font.

/s/ Katherine B. Wellington
Katherine B. Wellington

July 2, 2018                                        *On Behalf Of Petitioners-Appellants*

# CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on July 2, 2018.  I also certify that on July 2, 2018, the foregoing document is being served upon Petitioners-Appellants by U.S. mail at the following addresses:

Timmie D. Cole, Sr. (08570-030)
U.S.P. Victorville
P.O. Box 3900
Adelanto, CA 92301

Arnulfo Torres Perez (48996-080)
U.S.P. McCreary
P.O. Box 3000
Pine Knot, KY 42635

Jose Adrian Hernandez (55588-179)
U.S.P. McCreary
P.O.  Box 3000
Pine Knot, KY 42635

David Samarripa (80091-280)
U.S.P. McCreary
P.O. Box 3000
Pine Knot, KY 42635

Stephon Mason (06351-007)
U.S.P. McCreary
P.O. Box 3000
Pine Knot, KY 42635

/s/ Katherine B. Wellington
Katherine B. Wellington

July 2, 2018

*On Behalf Of Petitioners-Appellants*

# DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

## 1.    Record Excerpts from No. 6:17-cv-00150 (Cole):

| RE1 | Document Description | Page ID |
|-----|---------------------|---------|
| 1 | Petition | 1-9 |
| 3 | Filing Receipt | 30 |
| 4 | Memorandum Opinion | 31-34 |
| 5 | Judgment | 35 |
| 6 | Notice of Appeal | 36 |
| 9 | In Forma Pauperis Motion | 51-55 |
| 9-1 | In Forma Pauperis Motion | 56 |
| 11 | In Forma Pauperis Motion | 68-74 |
| 12 | In Forma Pauperis Order | 78-79 |

## 2.    Record Excerpts from No. 6:17-cv-00081 (Hernandez):

| RE2 | Document Description | Page ID |
|-----|---------------------|---------|
| 1 | Petition | 1-36 |
| 8 | Filing Receipt | 115 |
| 15 | Memorandum Opinion | 197-203 |
| 16 | Judgment | 204 |
| 17 | In Forma Pauperis Motion | 205-210 |
| 19 | Notice of Appeal | 221 |
| 21 | In Forma Pauperis Order | 226-227 |

## 3.    Record Excerpts from No. 6:17-cv-00082 (Mason):

| RE3 | Document Description | Page ID |
|-----|---------------------|---------|
| 1 | Petition | 1-35 |
| 9 | Filing Receipt | 94 |
| 16 | Memorandum Opinion | 179-185 |
| 17 | Judgment | 186 |
| 18 | Notice of Appeal | 187 |
| 22 | In Forma Pauperis Motion | 205-210 |
| 24 | In Forma Pauperis Order | 230 |

**4.    Record Excerpts from No. 6:17-cv-00072 (Perez):**

| RE4 | Document Description | Page ID |
|---|---|---|
| 1 | Petition | 1-34 |
| 7 | Filing Receipt | 51 |
| 17 | Memorandum Opinion | 156-162 |
| 18 | Judgment | 163 |
| 23 | Renewed Notice of Appeal | 182 |
| 26 | In Forma Pauperis Motion | 196 |
| 26-1 | In Forma Pauperis Motion | 197-202 |
| 28 | In Forma Pauperis Order | 212 |

**5.    Record Excerpts from No. 6:17-cv-00086 (Samarripa):**

| RE5 | Document Description | Page ID |
|---|---|---|
| 1 | Petition | 1-34 |
| 9 | Filing Receipt | 81 |
| 16 | Memorandum Opinion | 180-186 |
| 17 | Judgment | 187 |
| 19 | Notice of Appeal | 193 |
| 27 | In Forma Pauperis Motion | 225 |
| 27-1 | In Forma Pauperis Motion | 226-331 |
| 29 | In Forma Pauperis Order | 243-244 |